UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

CHARLES CARLTON FOUCHE'                                    PLAINTIFFS

VS.                              CIVIL ACTION NO. 3:07cv251TSL-JCS

SHAPIRO & MASSEY L.L.P., ET AL.                            DEFENDANTS

MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendants Shapiro & Massey L.L.P. and J. Gary Massey, and the separate motion of defendant Washington Mutual Bank, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Charles Carlton Fouche' has responded in opposition to the motions and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motions are well taken and should be granted.

Plaintiff has sued Washington Mutual, Shapiro and Massey and attorney Gary Massey for alleged wrongs in connection with their efforts to foreclose on his home in December 2006 and January 2007. Plaintiff has alleged claims against defendants for violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p, and for misrepresentation, defamation, intentional and negligent infliction of emotional distress and breach of fiduciary duty. Defendants seek summary judgment on all of plaintiff's claims.

The facts leading to plaintiff's filing of his complaint are not in dispute. In 1996, Fouche' executed a promissory note and deed of trust to finance his home in Jackson, Mississippi. In 1999, he refinanced his loan with Foundation Funding Group; his loan was immediately assigned to Bank United, of which defendant Washington Mutual is the successor. In 2000, Fouche' suffered a disabling back injury. Being unable to work, his sole income was social security disability payments, which were inadequate to allow him to keep up his mortgage payments, and he became in default on his mortgage.

In April 2003, Washington Mutual retained Shapiro & Massey to foreclose on plaintiff's home. Pursuant to that representation, Gary Massey sent a letter to Fouche' on April 9, 2003 advising that he was about to initiate foreclosure of the property. The letter was purportedly sent to satisfy the disclosure obligations imposed upon Massey by the Fair Debt Collection Practices Act (FDCPA).[1] On April 28, Massey, as Substituted Trustee, sent

---

[1]    Under the FDCPA, the consumer has the right to dispute a debt claimed by a debt collector, and to seek verification of the validity of the debt. 15 U.S.C. § 1692g(b). If the consumer notifies the debt collector in writing, "within the thirty-day period" afforded by the Act, that he disputes the debt or any portion of the debt, the debt collector must "cease collection." Id. The debt collector may resume collection activities only when it has obtained verification of the debt, and has mailed a copy of the verification to the consumer. Id. In the absence of a dispute notice, the debt collector is allowed to demand immediate payment and to continue collection activity.
The FDCPA requires the debt collector to inform the consumer of his right to dispute the debt and seek verification, requiring

Fouche' the Substituted Notice of Trustee's Sale, advising that a notice of foreclosure would be published May 1, May 8, and May 15, with the sale to take place May 22, 2003.  Fouche' did not respond to dispute the debt or request debt verification.  However, on May 20, 2003, plaintiff filed a Chapter 13 bankruptcy petition, which stopped the foreclosure sale.[2]  A plan was entered providing for monthly payments on the mortgage, but on January 28, 2004, the bankruptcy case was dismissed on account of plaintiff's failure to continue making the payments required by the plan.

---

the debt collector to send a written notice, within five days of its initial communication with the consumer, stating the amount of the debt and the name of the creditor to whom the debt is owed, 15 U.S.C. §§ 1692g(a)(1) & (2).  The validation notice must include "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector."  Id. § 1692g(a)(3).  The notice must incorporate "a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt."  Id. § 1692g(a)(4).  Finally, the notice must contain "a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor."  Id. § 1692g(a)(5).  Further, the FDCPA requires that a debt collector place a notice on all communications to the debtor that the communication is part of a collection effort, and that any information obtained will be used for that purpose.  15 U.S.C. § 1692e(11).  Failure to do so is considered a violation of the FDCPA.  Massey's letter included all the referenced disclosures.

[2]      This was not the first bankruptcy case Fouche' filed to try to retain his home.  He had filed previous bankruptcy cases in January 2001, which was dismissed in January 2002; in January 2002, which was dismissed in June 2002; in September 2002, which was dismissed in December 2002; and also in October 2002, which was dismissed in December 2003.

On May 16, 2006, Massey again wrote to Fouche' that he had been retained to foreclose on the property,[3] and provided him all the FDCPA disclosures, and on May 18, 2006, he wrote advising Fouche' that notice of foreclosure would be published May 26, June 2, and June 9, 2006, with the sale to take place on June 16, 2006. Fouche' did not respond to dispute the debt or request debt verification.  However, on June 13, Fouche' again filed for bankruptcy protection, which stopped the foreclosure sale.

Washington Mutual objected to plaintiff's Chapter 13 plan, claiming that Fouche' had understated the amount of his arrearage. In response, the bankruptcy court entered an order which allowed Washington Mutual's claim for an arrearage of $49,687.55; provided that if plaintiff fell more than sixty days behind in his payments, Washington Mutual could begin foreclosure on the property following notice and cure; and providing that if his bankruptcy case were dismissed for any reason, Fouche' would be barred from filing a new bankruptcy case for a period of 180 days from the dismissal order.

On December 18, 2006, the bankruptcy court dismissed plaintiff's bankruptcy case for failure to make plan payments.  On December 27, 2006, Massey sent Fouche' a letter advising that

---

[3]     Since the earlier foreclosure had been forestalled by plaintiff's May 2003 bankruptcy, Fouche' had filed two additional bankruptcy cases, the first in August 2004, which was promptly dismissed, and a second in June 2002, which was dismissed in June 2005.

4

Shapiro & Massey had been retained to initiate foreclosure
proceedings.  This letter, like each of the previous letters,
recited at the outset that it constituted "NOTICE REQUIRED BY THE
FAIR DEBT COLLECTION PRACTICES ACT, 15 USC 1692, ET SEQ."  The
letter then purported to provide disclosures required by FDCPA,
including the amount of the debt and the identity of the creditor,
and informed Fouche' of his right under the FDCPA to dispute the
debt, or any portion thereof, within thirty days of his receipt of
the letter.  The letter explained that Shapiro & Massey was not
required to wait thirty days before initiating foreclosure
proceedings, and that if it did begin foreclosure proceedings,
Fouche' retained the right to dispute the debt within thirty days
of receipt of the letter.  It further recited that if Fouche' did
"request proof of the debt, or any portion thereof . . . within
thirty days . . . , the Fair Debt Collection Practices Act
requires us to suspend our efforts to foreclose the mortgage on
the property, even if we have already initiated foreclosure
proceedings, until we mail you the information validating the
debt. . . ."  The letter recited that it was not a demand for
payment, but was merely intended to provide notice that "a
foreclosure proceeding will be commencing to sell the property to
satisfy some or all of the debt owed our client;" however, it also
included a paragraph advising without elaboration that if Fouche'
paid the amount shown as being owed, an adjustment might be

necessary to account for interest, late charges and other charges
that might have accrued following the date of the letter.  The
letter concluded:

> **PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES
> ACT, YOU ARE ADVISED THAT THIS OFFICE IS
> DEEMED TO BE A DEBT COLLECTOR.  ANY
> INFORMATION OBTAINED WILL BE USED FOR THAT
> PURPOSE.**

The following day, December 28, 2006, Massey, as Substituted
Trustee, sent a letter to Fouche', providing him a copy of the
Notice of Sale which he advised was scheduled to run in The
Clarion Ledger on January 5, 12, and 19, and informing Fouche'
that the foreclosure was scheduled for January 26, 2007.  Massey
contemporaneously forwarded the Substituted Trustee's Notice of
Sale to *The Clarion Ledger* with instructions that it be published
for three consecutive weeks, as required by state law.

Fouche' initially responded to Massey's letter of December 27
with a letter dated January 3, 2007 directed to Shapiro & Massey
in which he disputed the validity of the debt.  Fouche' requested
that Massey provide an itemized statement "showing how the balance
on my loan has grown to $134,110.32," including showing how much
of that amount was penalties and interest; he also requested that
Massey "inform [him] of the amount in arrears that is actually
owed to bring the loan current."

The letter was received by the office of Shapiro & Massey on
Friday, January 5, but was not seen by Massey until Monday

6

morning, January 8, 2007.  The very same day, Massey wrote a
response letter to Fouche', providing a breakdown of the total
amount due on the loan through that date.  The letter recited that
the amount due varied from day to day because of additional
attorney's fees and cost and other charges, that Fouche' should
call the attorney's office before sending any funds to verify he
was sending the correct amount, and that funds sent to pay off the
loan must be in the form of a cashier's check or certified funds
payable to Washington Mutual.

On the same day, before receiving Massey's letter responding
to his January 3 letter, Fouche' wrote a second letter to Massey,
in which he again wrote that he disputed the debt and declared
that he wanted "proof of the debt," and specifically, "an annual
month to month statement showing the accumulation of this sum
total that you say I owe."  He reiterated his request that Massey
advise him of "the amount of money in arrears that is actually
owed to bring the debt current."  In addition, Fouche' undertook
to remind Massey of his obligation under the FDCPA to suspend the
efforts to foreclose the mortgage "until you mailed me the
information and figures providing proof of the debt."

On January 11, 2007, after receiving Massey's January 8
letter, Fouche' again wrote to Massey, claiming that the figure
asserted by Massey as the amount owed was incorrect.  Fouche'
wrote, "I still dispute the validity of this debt," and asked that

Washington Mutual do a month-to-month accounting of his payment history from January 2002 to January 2007, including all payments received from the bankruptcy court. Fouche' maintained that he had not been given proper credit for his payments through the bankruptcy court, questioned a 132.85 charge for "NSF/Other Fees," and asked to be given a "correct figure that I need to pay to bring my loan current." Fouche' again questioned whether Massey had suspended foreclosure efforts, insisting that he was required to do so inasmuch as neither Massey nor Washington Mutual had yet to provide him with the requested "proof of the said debt."

On January 16, Massey responded to Fouche's letters, giving him the requested reinstatement figures for the loan, advising that funds for reinstatement should be in the form of a cashier's check or certified funds made payable to Shapiro & Massey L.L.P., and stating that upon receipt and verification of funds, "our office will dismiss the foreclosure action."

On January 25, 2007, the day before the foreclosure sale was scheduled to occur, Fouche' sought and obtained an *ex parte* injunction from the Hinds County Chancery Court to stop the foreclosure. Subsequently, however, on March 22, 2007, after Washington Mutual filed a response and after a hearing was held before the chancellor, an order was entered dissolving the injunction and allowing Washington Mutual to resume foreclosure. On March 29, Massey wrote to Fouche' that he was initiating

8

foreclosure proceedings, sending him the Notice of Sale and advising that the sale was scheduled for April 24, 2007.  On April 23, 2007, Fouche' filed a Chapter 7 bankruptcy petition, again stopping the foreclosure from proceeding.

Two weeks later, on May 4, 2007, Fouche' filed the present lawsuit against Washington Mutual, Shapiro & Massey and Gary Massey, alleging violations of the FDCPA, and various state law claims.

Plaintiff's principal claim against defendants is for alleged violation of the Fair Debt Collection Practices Act.  The FDCPA is intended to protect both debtors and non-debtors from misleading and abusive debt-collection practices.  See Wagstaff v. U.S. Dept. of Educ.,  509 F.3d 661, 663 (5th Cir. 2007) (citing 15 U.S.C. § 1692(e)); see also Peter v. GC Servs. L.P., 310 F.3d 344, 351-52 (5th Cir. 2002) (purpose of FDCPA is "to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors") (quoting S.Rep. No. 95-382 (1977), at 1-2, reprinted in 1977 U.S.C.C.A.N. 1695, 1696)).  The FDCPA, among other things, prohibits debt collectors from making false or misleading representations and limits the means by which they can communicate with consumers in connection with the collection of debts.  See 15 U.S.C.A. §§ 1692c, 1692e (1998).  It also includes specific disclosure requirements.  See supra note 1 (citing 15 U.S.C.

9

§§ 1692g & 1692e).  The FDCPA subjects a debt collector to civil
liability for failure to comply with any of its provisions.
<u>Wagstaff</u>, 509 F.3d at 663 (citing 15 U.S.C. § 1692k(a)).

Plaintiff argues that the Massey defendants violated the
FDCPA in a number of ways, including by (1) failing to inform him
that his request for debt validation was required to be in
writing; (2) improperly shortening the thirty-day period for
validation by establishing a trustee's sale date which fell on the
twenty-ninth day of the thirty-day validation period granted him
by the FDCPA and/or using conflicting deadlines for the thirty-day
validation period and thereby overshadowing his right to a thirty-
day validation period; and (3) making false and misleading
statements to plaintiff concerning his relationship with
Washington Mutual by purporting to identify Washington Mutual as
"our client" when, according to plaintiff, under the law, Gary
Massey, as substituted trustee, owed him an equal duty of fairness
and impartiality and a duty to be nonpartisan.

The prohibitions of the FDCPA apply only to "debt
collectors."  Washington Mutual has moved for summary judgment,
arguing that as a matter of law, it is not a "debt collector," and
that even if the Massey defendants were debt collectors–which it
contends they were not–it cannot be held vicariously liable for
their acts.  This is correct.  In fact, plaintiff concedes that as
the mortgagee, the one to whom the debt was payable, Washington

10

Mutual is not a "debt collector" under the FDCPA.  See 15 U.S.C. §
1692a(4) (creditors, mortgagees and mortgage servicing companies
are not debt collectors and are statutorily exempt from
liability).  The law is clear, too, that Washintgon Mutual cannot
be vicariously liable for the Massey defendants' activities, even
if the Massey defendants are "debt collectors."  See Bates v.
Novastar/Nationstar Mortgage LLC, Civil Action File No.
1:08-CV-1443-TWT, 2008 WL 2622810, 6, n.7 (N.D. Ga. 2008) (actions
of attorney hired to collect debt could not be imputed to
creditor); Conner v. Howe, 344 F. Supp. 2d 1164, 1170 (S.D. Ind.
2004) (creditor who hired attorney as a debt collector was not
vicariously liable with attorney for damages arising from
attorney's FDCPA violation).  And while it has been held that a
creditor may be liable for common law negligence based on a lack
of care in selecting, instructing and supervising third-party debt
collectors, see Freeman v. CAC Financial, Inc., No. 3:04CV981WS,
2006 WL 925609, 1 (S.D. Miss. Mar. 31, 2006), there has been no
such allegation or proof to that effect against Washington Mutual
in this case.  Accordingly, Washington Mutual is entitled to
summary judgment on plaintiff's FDCPA claim.

The Massey defendants argue in their motion that plaintiff
has no valid FDCPA claim against them because they are not "debt
collectors" and because their actions toward plaintiff did not

constitute "debt collection" but rather were only actions to enforce the mortgagee's security interest.

>    The FDCPA defines "debt collector" as
>
>    any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. ...  For the purpose of section 808(6) [15 U.S.C. § 1692f(6)], such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692a(6).  Section 1692f(6), referenced in this definition, prohibits a debt collector from taking or threatening to take "nonjudicial action to effect dispossession or disablement of property" if there is no present right to possession of the property claimed as collateral through an enforceable security interest, if there is no present intention to take possession of the property, or if the property is exempt by law from such dispossession or disablement.

Under the cited definition, a person whose principal purpose is the enforcement of security interests is a "debt collector" *for the purpose of § 1692f(6)*, but is not subject to the rest of the FDCPA unless he also fits § 1692a(6)'s general definition of a debt collector.  See Kaltenbach v. Richards, 464 F.3d 524, 527, 527 n.3 (5th Cir. 2006) (recognizing "distinction between general debt collection and enforcement of a security interest," and

observing that "[b]y the plain language of [§ 1692(a)(6)], ... a person whose business has the principal purpose of enforcing security interests but who does not otherwise satisfy the definition of a debt collector is subject only to § 1692f(6)") (citing <u>Montgomery v. Huntington Bank</u>, 346 F.3d 693, 699-700 (6th Cir. 2003) (repossession agency that was not otherwise a debt collector was subject only to § 1692f(6)).

The Massey defendants do not deny that they are "debt collectors" for the purpose of § 1692f(6), which is to say, they do not deny that the principal purpose of their business is the enforcement of security interests.  However, they deny they are general "debt collectors" subject to all the FDCPA's requirements. Whether the Massey defendants are "debt collectors" under the FDCPA, as alleged by plaintiff, requires consideration of the general nature of their law practice.  It is by now well established that attorneys who regularly engage in debt collection activities on behalf of their clients are "debt collectors" subject to the requirements of the FDCPA.  See <u>Heintz v. Jenkins</u>, 514 U.S. 291, 292, 115 S. Ct. 1489, 131 L. Ed. 2d 395 (1995); <u>Kaltenbach</u>, 464 F.3d at 527 ("<u>Heintz</u> stands for the proposition that litigating lawyers are not exempt from the FDCPA if they otherwise qualify as debt collectors.").

As the Fifth Circuit explained in <u>Kaltenbach</u>, under

13

§ 1962a(6), the general definition of debt collector, "a party's general, not specific, debt collection activities are determinative of whether they meet the statutory definition of a debt collector." <u>Kaltenbach</u>, 464 F.3d at 524.  Thus, "[w]hether a debt collector's specific action qualifies as the collection of a debt may or may not be relevant when determining whether the party must comply with other, specific substantive requirements of the FDCPA, but that is a separate inquiry from whether the party meets the general statutory definition of a debt collector." <u>Id</u>.  <u>See also Overton v. Foutty & Foutty, LLP</u>, No. 1:07-cv-0274-DFH-TAB, 2007 WL 2413026, 4 (S.D. Ind. Aug. 21, 2007) (in determining whether party is "debtor collector," focus "is not on the events of the particular transaction but on the principal purpose of the defendant's business and/or the defendant's regular activities") (citing <u>Kaltenbach</u>).

    In the case at bar, the evidence does not support plaintiff's allegation that the Massey defendants were "debt collectors" under the § 1962a(6) general definition.  Plaintiff does not argue that the "principal purpose" of Shapiro & Massey is the collection of debts, but he does contend that the law firm, and Gary Massey, regularly collect or attempt to collect debts, and hence qualify as debt collectors.  <u>See Garrett v. Derbes</u>, 110 F.3d 317, 318 (5th Cir. 1997) (holding that "a person may regularly render debt collection services, even if these services are not a principal

14

purpose of his business"). However, an affidavit by Gary Massey describing the nature of his and the firm's practice belies plaintiff's assertion. Massey declares:

> My law practice and that of Shapiro & Massey, LLP, is exclusively centered upon the representation of mortgage lenders or servicers in enforcing security interests securing real estate loans. Approximately 80% of my practice and that of Shapiro & Massey, LLP, involves foreclosing on deeds of trust, primarily through non-judicial foreclosures and occasionally through judicial foreclosures. Incidental to my foreclosure practice, I can estimate that approximately 20% of my practice involves work for these same mortgage lenders or servicers in bankruptcy proceedings related to the enforcement of deed of trust security interests.

> My practice and that of Shapiro & Massey, LLP, does not involve the collection of the debt underlying the security interests being foreclosed nor the collection of deficiency remaining following a foreclosure. To the best of my recollection, neither I nor the firm of Shapiro & Massey, LLP, have been requested to assist in the collection of a deficiency balance in three or four years.

"Whether a party 'regularly' attempts to collect debts is determined, of course, by the volume or frequency of its debt-collection activities." Brown v. Morris, 243 Fed. Appx. 31, 35, 2007 WL 1879392, 3 (5th Cir. 2007) (citing Garrett, 110 F.3d at 318. Moreover, as plaintiff notes, "if the volume of a person's debt collection services is great enough, it is irrelevant that these services only amount to a small fraction of his total business activity; the person still renders them 'regularly.'" Garrett, 110 F.3d at 318 (citing Stojanovski v. Strobl and Manoogian, P.C., 783 F. Supp. 319, 322 (E.D. Mich. 1992).

15

Defendants submit, and plaintiff agrees, that most federal courts have held that the provisions of the FDCPA (with the exception of § 1692f(6) and § 1692i(a)[4], which are expressly applicable to the enforcement of security interests), to be inapplicable to the enforcement of security interests, such as in the context of the typical non-judicial home foreclosure.  See, e.g., Maynard v. Cannon, No. 2:05CV335DAK, 2008 WL 2465466, at 4 (D. Utah June 16, 2008) (where evidence showed that defendant attorney was hired for limited purpose of non-judicially foreclosing deed of trust, and plaintiff offered no evidence as to the frequency of defendant's security enforcement or debt collection practices, defendant's activities fall outside the FDCPA's general provisions); Overton, No. 1:07-cv-0274-DFH-TAB, 2007 WL 2413026, at *4 (S.D. Ind. Aug. 21, 2007) (recognizing majority position that party whose activities are limited to enforcement of security interests is not subject to all FDCPA requirements, and stating, "[i]f a person invokes judicial remedies only to enforce the security interest in property, then the effort is not subject to the FDCPA (other than § 1692f(6) and § 1692i(a))[,] [b]ut if the person is also seeking additional relief, such as a personal judgment against the borrower, then the FDCPA applies.") (collecting cases); Chomilo v. Shapiro, Nordmeyer

---

[4] § 1692i(a)(1) is a venue provision for mortgage foreclosures.  See § 1692i(a).

16

& Zielke, LLP, Civ. No. 06-3103 (RHK/AJB), 2007 WL 2695795, at *6 (D. Minn. Sept. 12, 2007) (holding that law firm executing nonjudicial foreclosure proceeding was enforcing a security interest rather than collecting a debt and hence fell outside the ambit of the FDCPA except for the provisions of section 1692f(6)); Acosta v. Campbell, No. 6:04CV761 ORL28DAB, 2006 WL 3804729, at *4 (M.D. Fla. Dec. 22, 2006) ("Nearly every court that has addressed the question has held that foreclosing on a mortgage is not a debt collection activity for the purposes of the FDCPA"); Beadle v. Haughey, No. Civ. 04-272-SM, 2005 WL 300060, at *3 (D.N.H. Feb. 9, 2005) ("[I]t seems very well established that foreclosing on a mortgage does not constitute debt-collecting activity under the FDCPA."); Rosado v. Taylor, 324 F. Supp. 2d 917, 924 (N.D. Ind. 2004) ("Security enforcement activities fall outside the scope of the FDCPA because they aren't debt collection practices"); Hulse v. Ocwen Federal Bank, FSB, 195 F. Supp. 2d 1188, 1210 (D. Or. 2002) (actions taken by attorneys as part of foreclosure of trust deed "may not be challenged as FDCPA violations").

In Kaltenbach, the defendant attorney initiated an executory-process, i.e., non-judicial foreclosure, on the plaintiff's home.  The Fifth Circuit framed the issue presented as "whether [the defendant] is subject to § 1692g if he satisfies the general definition of a debt collector, even though he was merely enforcing a security interest in his dealings with [plaintiff]."

17

464 F.3d at 527.  Subsequently, the court concluded in <u>Brown v.</u>
<u>Morris</u>, that an attorney who undertook non-judicial foreclosure
was "not *per se* an FDCPA debt collector."   243 Fed. Appx. 31, 35,
2007 WL 1879392, at *3.  The court further found no error in the
district court's having instructed the jury that "[o]rdinarily,
the mere activity of foreclosing on a person's property under a
deed of trust is not the collection of a debt within the meaning
of the FDCPA unless other actions, beyond those necessary to
foreclose under the deed of trust, were taken in an effort to
collect a debt.'" <u>Id</u>.  Thus, although the Massey defendants'
practice involved their regularly conducting non-judicial
foreclosures to enforce their clients' security interest in
mortgaged property, defendants were not acting as general "debt
collectors," unless they also took other actions, beyond those
necessary to foreclose under the deed of trust, were regularly
taken in an effort to collect a debt.

    In contrast to non-judicial foreclosures, which are intended
only to enforce the lender's security interest and not to collect
the underlying debt, a typical judicial foreclosure usually does
involve seeking a personal judgment against the debtor for a
deficiency and hence would likely amount to debt collection.  <u>See</u>
<u>McDaniel v. South & Assocs., P.C.</u>, 325 F. Supp. 2d 1210, 1216–1218
(D. Kan. 2004) (holding that the defendant's actions in filing
judicial foreclosure proceeding against mortgagor amounted to debt

18

collection activity under the FDCPA, and distinguishing decisions involving pursuit of non-judicial foreclosure proceedings under a deed of trust, from those in which a defendant "has pursued judicial foreclosure proceedings--which included seeking judgment on a note--by filing a lawsuit in state court"). In his affidavit, Massey acknowledges that his law firm "occasionally" files an action for judicial foreclosure; but in the court's opinion, the proper emphasis is on "occasionally," which is the antithesis of "regularly." See Meriam-Webster Online: Collegiate Dictionary (2008) (http://www.merriam-webster.com/dictionary.htm (Aug. 4, 2004)) (defining "occasional" as "encountered, occurring, appearing, or taken at irregular or infrequent intervals"). Plaintiff here has offered no evidence to the contrary.[5]

-----

[5]The only evidence offered by plaintiff is a statement from the Shapiro & Massey web site generally describing the types of services performed by the firm, as follows:

> Shapiro & Massey, LLP was established in 1990 and specializes in representing mortgage lenders and creditors in real estate, collections and bankruptcy matters for the entire State of Mississippi. While our main emphasis would be representing lenders in foreclosure actions, both judicial and non-judicial, we also offer many other related services. Some of these services include title searches, bankruptcy representation, replevins, collections, title curative and evictions.

Plaintiff highlights the reference to judicial foreclosures; but he has not tried to show that these are regularly undertaken by the law firm.

The court notes that plaintiff has also pointed out that the Shapiro & Massey firm is part of a network of Shapiro law firms throughout the country, and he notes that one of these firms has been found by a Florida court to be a debt collector. The opinion in Sandlin v. Shapiro & Fishman reflects that when the Sandlins fell behind in their mortgage payments, the Shapiro & Fishman law

Plaintiff does argue that the Massey defendants'
communications with him evinced an effort to collect a debt, i.e.,
that they took actions beyond those necessary to foreclose.
Specifically, he points out that in his correspondence with
plaintiff dated December 29, 2006, Gary Massey advised plaintiff
he should "contact this office if [he] wish[ed] to avoid
foreclosure by reinstating [his] loan," and wrote that "[t]he
correct amount must be paid to the undersigned in cash or
certified funds prior to the sale."  Subsequently, in response to
plaintiff's request, Massey provided reinstatement figures and
wrote that funds should be made payable to Shapiro & Massey.
Plaintiff argues that Massey's communications constituted "debt
collection" activities.  See Wilson v. Draper & Goldberg,
P.L.L.C., 443 F.3d 373, 377 (4th Cir. 2006) ("By sending a letter
seeking payment of an amount to 'reinstate the above account' and
directing Wilson to pay that amount by cashiers check, Defendants

---

firm in Florida was hired "to collect the Sandlin note and
mortgage through correspondence and/or legal proceedings."  919 F.
Supp. 1564, 1567 (M.D. Fla. 1996).  The court found that "Shapiro
& Fishman and Shapiro met the general definition of a 'debt
collector' and are therefore subject to the FDCPA."  Id.  The fact
that Shapiro & Fishman, a separate legal entity from Shapiro and
Massey, may regularly engage in debt collection activities does
not mean that Shapiro & Massey does, as well.  The evidence here,
in fact, is to the contrary.  Moreover, the court would note that
in Chomilo v. Shapiro, Nordmeyer & Zielke, LLP, Civ. No. 06-3103
(RHK/AJB), 2007 WL 2695795, at *5 (D. Minn. Sept. 12, 2007), the
court concluded that another Shapiro law firm was not a "debt
collector" where, as here, it was hired only to conduct a non-
judicial foreclosure.

sought to collect [a debt]."). However, the evidence is uncontradicted that Massey was not hired to collect the debt but rather solely to conduct the foreclosure, and that he did not undertake to collect the underlying debt. Massey never demanded or requested that plaintiff make any payment to reinstate his loan; rather, his communications with plaintiff simply provided notice to plaintiff consistent with plaintiff's statutory right to cure his default and reinstate the loan. See Miss. Code Ann. § 89-1-59. Such notice was necessary to foreclose under the deed of trust. Indeed, the January 29, 2007 notice of sale was sent by Massey as the substituted trustee not as an attempt to collect a debt, nor as an effort to obtain information but rather in an attempt to satisfy conditions precedent to a foreclosure on the mortgage. See Cavallaro v. Law Office of Shapiro & Kreisman, 933 F. Supp. 1148, 1156-1157 (E.D.N.Y. 1996) (personal notice of sale was not a debt communication that required § 1692e(11) disclosure requirements because it was not attempt to collect a debt or to obtain information but attempt to satisfy conditions precedent to a foreclosure on secured agreement). Moreover, while Massey did provide reinstatement figures, he did so only as a courtesy to plaintiff and in response to plaintiff's request for this information. This did not transform Massey into a "debt collector."

21

However, even if Massey's actions in plaintiff's individual case could be found to have amounted to "debt collecting," rather than mere enforcement of a security interest--which they did not-- that fact would not create an issue for trial on the question whether the Massey defendants are debt collectors under § 1692a(6), because plaintiff has not attempted to show that these defendants "regularly" undertook other actions, beyond those necessary to foreclose under the deed of trust, in an effort to collect a debt.  <u>Kaltenbach</u>, 464 F.3d at 524 (party's general, not specific, debt collection activities determine whether he meets statutory definition of a debt collector, so that question whether debt collector's specific action qualifies as collection of a debt "is a separate inquiry from whether the party meets the general statutory definition of a debt collector").  In sum, plaintiff has not presented evidence from which a reasonable jury could find the Massey defendants regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  <u>See</u> § 1692a(6).  It follows that the Massey defendants are not subject to the requirements of the FDCPA, other than § 1692f(6) and § 1692i(a), and that they are therefore entitled to summary judgment on plaintiff's FDCPA claims.[6]

---

[6]      Plaintiff notes that Massey routinely included statements in his correspondence with plaintiff to the effect that "This Firm is a Debt Collector," "This is an Attempt to Collect a Debt," and that the notices were being provided "Pursuant to the Fair Debt Collection Practices Act."  He acknowledges that merely

Because the court concludes that the Massey defendants were not debt collectors, the court need not consider defendants' further argument that the Massey defendants' actions complied with the requirements of the FDCPA applicable to general debt collectors.

Plaintiff has purported to allege a number of state law claims which are also the subject of defendants' motions. Plaintiff's claim for negligent and/or intentional infliction of emotional distress is based on the same general conduct which he alleges constituted a violation of the FDCPA, that is, proceeding

---

announcing that one is a FDCPA debt collector does not make you one, but urges the court to consider the fact that defendants so prominently identify themselves as such should be given consideration.

In Chomilo v. Shapiro, Nordmeyer & Zielke, LLP, 2007 WL 2695795, 6 (D. Minn. 2007), the plaintiff argued that the defendant law firm SNZ held itself out as a "debt collector" in its letters and notices by including FDCPA disclaimers and was thereby "estopped" from denying it was a "debt collector." The court disagreed, and stated:

> [I]f SNZ includes FDCPA disclaimers in its notices then it may be seen as holding itself out as a debt collector under the FDCPA, but if it does not include such disclaimers then it subjects itself to potential liability for failing to comply with the FDCPA if a court were to determine that SNZ is a debt collector for purposes of the entire FDCPA and not just section 1692f(6). The Court will not penalize SNZ for having to make a Hobson's choice in this unsettled area of the law. SNZ was conducting a nonjudicial mortgage foreclosure by advertisement pursuant to Minnesota law. It was reasonable for SNZ to err on the side of caution and include the FDCPA disclaimers in its communications to Chomilo.

Id. See also Alexander v. Omega Mgmt., Inc., 67 F. Supp. 2d 1052, 1056 (D. Minn. 1999) (finding that inclusion of FDCPA language in notices does not estop a defendant from denying that it is a debt collector).

with efforts to foreclose on his home without giving him the requisite thirty days to request debt validation, continuing with efforts to foreclose notwithstanding their failure to provide proof of the debt at plaintiff's request, and the Massey defendants' representing they were acting on behalf of Washington Mutual, which they described as "our client," without acknowledging or honoring their equal duty of fairness and impartiality to him.  To sustain a claim for intentional infliction of emotional distress, plaintiff must show that defendants' conduct was "malicious, intentional, willful, wanton, grossly careless, indifferent or reckless."  Leaf River Forest Prods., Inc. v. Ferguson, 662 So. 2d 648, 659 (Miss. 1995). Plaintiff has made and can make no such showing here.

In order to recover emotional distress damages resulting from ordinary negligence, plaintiff must prove the usual elements of duty, breach, causation and damages.  As to the latter two elements, the Mississippi Supreme Court has held that because of the nature of the claim, the plaintiff must prove he suffered "some sort of physical manifestation of injury or demonstrable harm, whether it be physical or mental, and that harm must have been reasonably foreseeable to the defendant."  American Bankers' Ins. Co. of Florida v. Wells, 819 So. 2d 1196, 1208 (Miss. 2001)). Here, defendants do not necessarily deny that plaintiff can produce evidence that he has experienced emotional distress with

24

accompanying physical harm.  They contend, however, that any emotional distress he has suffered was not caused by any alleged failure on their part to strictly adhere to the requirements of the FDCPA (as plaintiff contends), but rather is the result of plaintiff's ceaseless efforts over a period of six years to stave off foreclosure on his home.  Plaintiff does not dispute that at the time defendants elected to initiate foreclosure proceedings in December 2006, he was severely in default, and had been for a number of years, and that despite having filed numerous bankruptcies in his effort to save his home, he had been unsuccessful in doing so because he lacked the financial means to make the payments.  Perhaps defendants' decision to proceed with foreclosure following the bankruptcy court's dismissal in December 2006 of his eighth bankruptcy case added to plaintiff's emotional distress; but defendants had the absolute right to foreclose on the home.  And no reasonable person could conclude that defendant's alleged violations of the FDCPA were the proximate cause of his emotional distress.

Plaintiff's claim for defamation is based on his charge that defendants' publication of the Substituted Trustee's Notice of Sale to foreclose on the property constitutes defamation.  In their motion for summary judgment, defendants maintain that plaintiff's defamation claim fails as a matter of law because the contents of the alleged statements contained in the Notice of Sale

were true and/or because the publication of the Notice of Sale was privileged, having been made in accordance with the requirements for a non-judicial foreclosure proceeding to protect Washington Mutual's interest in the property.  See Stephens v. Kemco Foods, Inc., 928 So. 2d 226, 233 (Miss. Ct. App. 2006) (elements of defamation include, among others, "a false and defamatory statement regarding the plaintiff (and) unprivileged publication to a third party").  In response to defendants' motion, plaintiff offers no factual or legal support for his claim, but rather merely declares, without elaboration, that his claim for defamation "do[es] not fail."  In the court's opinion, however, this claim does fail for the reasons assigned by defendants.

Plaintiff's final claim is brought against the Massey defendants for alleged breach of fiduciary duty.  In his complaint, plaintiff alleged that defendants breached a fiduciary duty "owed to him as a consumer" to comply with the verification requirements of the FDCPA.  However, defendants pointed out in their motion that they owe no fiduciary duty to plaintiff "as a consumer," which plaintiff does not dispute.  Instead, in response to the Massey defendants' motion, plaintiff now claims that as a matter of law, Gary Massey, based on his position as trustee in the deed of trust, owed a fiduciary duty to both the mortgagee and mortgagor.  In Lee v. Lee, 236 Miss. 260, 109 So. 2d 870 (Miss. 1959), cited by plaintiff in support of his position, the court

did hold that "[t]he trustee in a deed of trust is the agent of
both parties, and he therefore occupies a fiduciary relationship
to both parties."  However, the Mississippi Supreme Court has
since disavowed this holding in Lee, explaining in Wansley v.
First Nat. Bank of Vicksburg, 566 So. 2d 1218 (Miss. 1990), that
"[]t]he trustee of a trust deed is not a trustee in the strict
sense of the word," but rather his role "is more nearly that of a
common agent of the parties to the instrument."  Id. at 1223
(quoting Lancaster Security Investment Corp. v. Kessler, 159 Cal.
App. 2d 649, 656, 324 P.2d 634, 638 (1958)).  Plaintiff's claim
for breach of fiduciary thus fails.

Plaintiff has purported to assert a claim for
misrepresentation against Washington Mutual based on an allegation
that it failed to give him credit for payments made by the
bankruptcy trustee and consequently misrepresented to plaintiff
the amount he owed on the mortgage.  Washington Mutual has moved
for summary judgment on this claim, asserting and presenting
evidence that all payments made by the bankruptcy trustee were
properly applied to plaintiff's account, and arguing further that
the claim is barred by res judicata.  Plaintiff has not responded
to Washington Mutual's summary judgment on this claim, and the
motion, which appears meritorious on its face, will be granted.[7]

_____

[7]     Washington Mutual has also moved for summary judgment on
any claim sought to be asserted by plaintiff under the Homeowners
Counseling Act, 12 U.S.C. § 1701x, which is referenced in his

Based on the foregoing, it is ordered that defendants' motions for summary judgment are granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 5th day of August, 2008.


                                        /s/ Tom S. Lee
                                        UNITED STATES DISTRICT JUDGE

---

complaint.  In its motion, Washington Mutual points out not only that there is no private right of action under this Act, but also that it provided plaintiff with notice of the availability of counseling, but that assistance could not be offered plaintiff because of his bankruptcy filings.  Plaintiff has offered no basis for opposing Washington Mutual's motion on this claim.